**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10289 |
| Plaintiff - Appellee, | D.C. No. 1:06-cr-00080-SOM-BMK-2 |
| v. | |
| RODNEY JOSEPH, Jr., | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10441 |
| Plaintiff - Appellee, | D.C. No. 1:06-cr-00080-SOM-BMK-2 |
| v. | |
| RODNEY JOSEPH, Jr., | |
| Defendant - Appellant. | |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-10499 |
| Plaintiff - Appellee, | D.C. No. 1:06-cr-00080-SOM-BMK-5 |
| v. | |
| ETHAN MOTTA, AKA Malu, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-10114 |
| Plaintiff - Appellee, | D.C. No. 1:06-cr-00080-SOM-BMK-2 |
| v. | |
| RODNEY JOSEPH, Jr., | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, Chief District Judge, Presiding

Argued and Submitted December 9, 2011
San Francisco, California

Before: ALARCÓN, CALLAHAN, and N.R. SMITH, Circuit Judges.

Defendants-Appellants Rodney Joseph, Jr. and Ethan Motta appeal their

convictions under the Racketeer Influenced and Corrupt Organizations ("RICO")

statute, 18 U.S.C. §§ 1961-1968, and the Violent Crime in Aid of Racketeering

("VICAR") statute, *id.* § 1959.  Joseph also appeals from the district court's orders

denying his motions for a new trial.[1]  We have jurisdiction over these appeals pursuant to 28 U.S.C. § 1291.  Finding no error in the district court's rulings, we affirm the convictions and the orders denying a new trial.[2]

Joseph and Motta were members of groups competing to provide security for illegal gambling rooms in Honolulu, Hawaii.  In 2003, they successfully took over the security for rooms owned and operated by Kai Ming Wang from a group run by Lepo Taliese, but Taliese re-asserted control in early 2004.  On January 7, 2004, the two groups met at a golf course in Oahu.  Joseph, Motta, and co-defendant Kevin Gonsalves shot Taliese and two other men from Taliese's group.  Taliese and one of the other men died.  The jury convicted Joseph and Motta of conducting racketeering activity, conspiring to conduct racketeering activity, operating an illegal gambling room, and murder and attempted murder in aid of racketeering. The jury also convicted Joseph of assault with a dangerous weapon in aid of racketeering.  Both defendants received life sentences.  Joseph and Motta appeal their convictions on 15 grounds.

---

[1] These motions were predicated upon issues Joseph raises in his appeal from his conviction.

[2] We restate the facts and procedural history only as necessary to explain our decision.

1. The district court did not abuse its discretion in rejecting the defendants' plea agreements or in denying the government's motions for downward departures. The district court correctly determined that, under the VICAR statute, Joseph and Motta would be required to serve life sentences unless it granted downward departures. *See* 18 U.S.C. § 1959(a). The district court did not abuse its discretion in denying downward departures because there was little, if any, evidence that Joseph or Motta did anything more than plead guilty.

2. Motta's counsel did not provide ineffective assistance of counsel in conjunction with Motta's plea agreement. Although Motta's counsel did not advise him of the VICAR statute's mandatory minimum sentence when Motta signed the plea agreement and pleaded guilty, his counsel nonetheless negotiated a plea agreement with a reduced sentence and secured a government motion for downward departure to effectuate that sentence. This representation was objectively reasonable. Moreover, Motta cannot show that he suffered any prejudice; he had no constitutional right to enter into a plea agreement or to a downward departure, and he would have made the same choices if he had known about the mandatory minimum sentence. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

3.     The district judge did not abuse her discretion in declining to recuse herself. Under Fed. R. Crim. P. 32(e), the district court was permitted to, and did, review Joseph and Motta's presentence investigation reports ("PSRs") after Joseph and Motta pleaded guilty. Neither 28 U.S.C. § 455(a) or 455(b) required the district judge's recusal because there was no evidence her impartiality might reasonably be questioned. The opinions she expressed after her exposure to information in the PSRs, and to co-defendant Kevin Gonsalves's plea agreement and plea colloquy, did not "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). The defendants also fail to show that they suffered any prejudice due to the district judge's alleged bias.

4.     The district court did not abuse its discretion in denying Joseph's motion to transfer venue due to pretrial publicity. Joseph suffered no actual prejudice because the jury was carefully selected and showed no bias, and Joseph stated that he had no objection to its composition or manner of selection. The district court also dismissed the only two individuals to whom Joseph objected. No presumption of prejudice was warranted because the pretrial publicity occurred well before the trial started and in a large community, and the publicity was

factual, not inflammatory, in nature. *See Skilling v. United States*, -- U.S. -- , 130 S. Ct. 2896, 2915 (2010); *Hayes v. Ayers*, 632 F.3d 500, 508 (9th Cir. 2011).

5. The district court correctly concluded that Joseph waived the attorney-client privilege by asserting that his counsel provide ineffective assistance before and during Joseph's interview with the police. *See Bittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003) (explaining that defendant who alleges ineffective assistance of counsel waives attorney-client privilege as to matters he or she challenges). The district court properly limited the scope of the waiver to those matters, *see id.*, and prohibited the use of Joseph's communications with his lawyer at trial. Under these circumstances, no *in camera* hearings were required.

6. The district court's admission of the Cambra evidence was proper. We may affirm the district court's evidentiary rulings on any ground supported by the record. *United States v. Valencia-Amezcua*, 278 F.3d 901, 906 & n.2 (9th Cir. 2002). Joseph was not subject to custodial interrogation and thus had no Fifth Amendment right to counsel or to warnings under *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), making his statements to the police, and the Cambra evidence that was derived from them, admissible. In any event, the defendants suffered no prejudice from the introduction of the Cambra evidence because substantial other

6

evidence put Joseph and Motta at the Pali Golf Course with guns at the time of the shootings.

7.     The district court's decision to allow the government to use Joseph's statements to the police on rebuttal did not impermissibly "chill" Joseph's legal representation or otherwise deny him "a meaningful opportunity to present a complete defense." *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006).  First, because Joseph was not subject to interrogation, his statements to the police should not have been suppressed.  Second, the court imposed only one limitation on Joseph or his attorney,[3] and that limitation was proper.  *See United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir. 1987) (explaining that trial courts possess "broad discretion" to control opening statements).

8.     The district court did not violate the Confrontation Clause by admitting the dying declaration of Lepo Taliese.  The Confrontation Clause applies only to testimonial statements.  *Whorton v. Bockting*, 549 U.S. 406, 419-20 (2007); *Davis v. Washington*, 547 U.S. 813, 823-25 (2006).  The statements that Taliese

---

[3] Joseph's attorney had proposed saying, in his opening statement, that the trial evidence would show that Joseph did not have a gun at the Pali Golf Course at the time of the shootings.  Because Joseph's statements to the police contradicted that assertion, the district court ruled that the assertion could open the door to the use of Joseph's statements.  Joseph's attorney instead asserted that there would not be evidence that Joseph possessed or had shot a gun at the golf course.

7

made to the police after he was shot were not testimonial because, objectively viewed, they were elicited to assist the police in responding to an ongoing emergency. *Michigan v. Bryant*, -- U.S. -- , 131 S. Ct. 1143, 1150 (2011). Even if Taliese's statements were testimonial, the district court correctly ruled that they were admissible as dying declarations under Fed. R. Evid. 804(b)(2).

9. A defendant waives appellate review of a claim, even a constitutional one, by intentionally relinquishing or abandoning it at trial. *United States v. Olano*, 507 U.S. 725, 731, 733 (1993); *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc). Motta waived his objections to the admission and use of a recorded conversation between himself and his cousin, Jonnaven Monalim, and to Monalim's testimony regarding that conversation, by (1) agreeing that the government could use those statements for impeachment and rebuttal purposes, and then (2) making a tactical choice to introduce the statements himself during his direct examination. *See United States v. Williams*, 939 F.2d 721, 723-25 (9th Cir. 1991) ("While the choice between preempting the prosecution and preserving [an] . . . objection for appeal may be perilous, it is no more so than many other decisions defense attorneys must make at trial.").

10. The district court did not abuse its discretion in denying the request to bar Motta's recording as a discovery sanction under Fed. R. Crim. P. 16. The

government discovered the recording four years after it was made and promptly turned it over to the defense. The district court properly exercised its broad discretion under Rule 16 to choose to redact, rather than exclude, the recording. The defendants cannot show they suffered any prejudice as a result of the late disclosure; they received the recording eight days before opening statements and five weeks before it was introduced into evidence.

11. The United States did not violate *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose potential impeachment evidence regarding three government witnesses. Assuming *arguendo* that the government was required to disclose the evidence, the witnesses' testimony was cumulative of other evidence, and so would not have "created a 'reasonable probability of a different result.'" *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

12. There was sufficient evidence of an "enterprise" under the RICO and VICAR statutes to support the jury's verdicts. *See* 18 U.S.C. §§ 1959(a), 1962 (setting forth required elements, including "enterprise"). The evidence showed that Joseph and Motta were part of a group of individuals who together operated and profited from illegal gambling. *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (explaining that "enterprise" exists where individuals come together to

9

engage in a course of conduct for a common purpose); *see also* 18 U.S.C. §§ 1959(b)(2), 1961(4) (defining "enterprise").

13.  The trial evidence established that Motta and Joseph conducted the affairs of an enterprise through a "pattern of racketeering activity" under the RICO statute.  The evidence showed that (1) Joseph and Motta committed two racketeering acts (assisting in the operation of an illegal gambling business, and extorting owners of a competing business), and Joseph committed the third act of robbery; (2) these acts were related by virtue of their common purpose (to enrich Joseph, Motta, and others); and (3) the acts were "continuous" because they existed over many months and "pose[d] a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

14.  There was sufficient evidence to support the jury's verdict that Joseph was guilty of an assault with a dangerous weapon in aid of racketeering.  The evidence showed that Joseph and other men held the patrons of a competing game room at gunpoint and robbed them in violation of Hawaii's armed robbery statute, Haw. Rev. Stat. § 708-840.  The government could prove "assault" with a deadly weapon under federal common law, and was not required to do so under state law. Neither the VICAR statute nor any other authority requires that "assault" be defined by the state whose law has been violated.  *See United States v. Le*, 316 F.

10

Supp. 2d 355, 359-60 (E.D. Va. 2004) ("[I]t is clear that Congress intended to include within the scope of § 1959[ ] generic conduct amounting to an assault with a dangerous weapon, in violation of state law regardless of what label a state may attach to that conduct.").

15.     The cumulative effect of constitutional errors can result in prejudice requiring reversal of a defendant's conviction. *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). However, where, as here, there is no single constitutional error, "there is nothing to accumulate to a level of a constitutional violation." *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

For the foregoing reasons, Joseph's and Motta's convictions are **AFFIRMED**. The district court's orders denying Joseph's motions for a new trial are **AFFIRMED**.[4]

---

[4] We strike Motta's "motion to supplement issue and authorities for oral argument" because it raises issues and arguments not presented in the briefs or the district court. *See United States v. Gonzalez-Torres,* 309 F.3d 594, 599 n.1 (9th Cir. 2002); *see also Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999); *United States v. LaPierre*, 998 F.2d 1460, 1466 n.5 (9th Cir. 1993).