**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-16539 |
| *Plaintiff-Appellee*, | D.C. Nos. 3:20-cv-06531-WHO 3:13-cr-00764-WHO-6 |
| v. | |
| REGINALD ELMORE, AKA Fat Reg, | |
| *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted April 9, 2024
San Francisco, California

Filed October 8, 2024

Before: Richard A. Paez and Jennifer Sung, Circuit Judges,
and Sidney A. Fitzwater,[*] District Judge.

Opinion by Judge Paez

---

[*] The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

## SUMMARY[**]

### 28 U.S.C. § 2255

The panel reversed the district court's denial of Reginald Elmore's 28 U.S.C. § 2255 motion challenging the validity of his conviction for use or possession of a firearm during murder in aid of racketeering in violation of 18 U.S.C. § 924(j)(1), and remanded for further proceedings.

The predicate crime of violence for Elmore's § 924(j)(1) conviction was VICAR (Violent Crimes in Aid of Racketeering) murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). To constitute a crime of violence sufficient to support the § 924(j)(1) conviction, Elmore's VICAR charges must satisfy 18 U.S.C. § 924(c)(3)(A), the elements clause of § 924(c)(3). The elements clause requires that the offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

The panel held that the VICAR statute is divisible, and that the modified categorical approach must therefore be applied to determine the elements of Elmore's charged VICAR offense.

Applying the modified categorical approach, the panel concluded that Elmore was charged with VICAR murder in aid of racketeering predicated on murder under California law. The panel held that where, as here, the predicate state-law violation supplied the definition of murder for the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

VICAR offense, courts should look through to the elements of that state-level violation to determine whether the VICAR offense, as charged or convicted, constitutes a crime of violence under § 924(c)(3)(A). Because the district court did not consider whether California murder necessarily involves the force required to be a valid predicate for a § 924(j)(1) conviction, and declined to address the government's procedural arguments, the panel reversed and remanded for further proceedings.

## COUNSEL

Sangita K. Rao (argued), Trial Attorney, Appellate Section, Criminal Division; Lisa H. Miller, Deputy Assistant Attorney General; Nicole M. Argentieri, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; Kevin J. Barry, Assistant United States Attorney, Northern District of California; Matthew M. Yelovich, Chief, Appellate Section; United States Department of Justice, Office of the United States Attorney, San Francisco, California; for Respondent-Appellee.

Gail Ivens (argued), Attorney at Law, Monterey, California, for Defendant-Appellant.

## OPINION

PAEZ, Circuit Judge:

Reginald Elmore challenges the validity of his 2019 conviction for use or possession of a firearm during murder in aid of racketeering in violation of 18 U.S.C. § 924(j)(1). To be valid, Elmore's § 924(j)(1) conviction requires a predicate "crime of violence," meaning an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The predicate offense for Elmore's § 924(j)(1) conviction—VICAR murder in violation of 18 U.S.C. § 1959(a)(1)[1]—itself requires a predicate violation of state or federal law.

We hold that the modified categorical approach must be applied to determine the elements of Elmore's charged VICAR offense. We conclude that Elmore was charged with VICAR murder in aid of racketeering predicated on murder under California law. Because we are persuaded that determining whether this charged offense "has as an element the . . . use of physical force" against another person requires considering whether California murder necessarily involves the requisite force, we reverse and remand to the district court for further proceedings.

## I.

In 2014, Elmore was one of nearly a dozen defendants charged with various racketeering-related offenses arising from their involvement in the Central Divisadero Players

---

[1] Section 1959 is commonly called VICAR due to its title, "Violent crimes in aid of racketeering activity." 18 U.S.C. § 1959.

("CDP"), a San Francisco street gang. The second superseding indictment charged Elmore with RICO conspiracy (Count One), two counts of VICAR murder (Counts Six and Seven), and use or possession of a firearm during VICAR murder (Count Eight). As charged, Count Eight was expressly predicated on "the murders in aid of racketeering . . . charged in Counts Six and Seven." Counts Six and Seven, in turn, alleged that:

> On or about August 14, 2008, . . . as consideration for the receipt of, and as consideration for a promise or agreement to pay[] anything of pecuniary value from the CDP enterprise, and for the purpose of gaining entrance to and maintaining and increasing position in CDP, an enterprise engaged in racketeering activity, . . . [Elmore] unlawfully and knowingly did murder [Andre Helton and Isaiah Turner], in violation of California Penal Code Sections 187, 188, 189, and 31–33. All in violation of [18 U.S.C. §§] 1959(a)(1) and [(2)].

The indictment thus expressly charged Elmore with VICAR "murder . . . in violation of California" law.[2]

---

[2] The indictment cites various sections of the California Penal Code relating to murder: Section 187 defines murder; Section 188 defines malice aforethought; Section 189 defines the crimes of first- and second-degree murder; and Sections 31–33 define inchoate and accessory liability. Cal. Penal Code §§ 187–89, 31–33.

Elmore pleaded guilty to Count One and Count Eight.[3] Counts Six and Seven, the substantive VICAR murder charges on which Count Eight was predicated, were dismissed on the government's motion. Elmore was ultimately sentenced to 144 months on Count One and 120 months on Count Eight, to be served consecutively.

Elmore's direct appeal, which he filed pro se, was dismissed by this court as untimely. Elmore then filed a motion to vacate under 28 U.S.C. § 2255 raising a single claim: that his § 924(j)(1) conviction was unconstitutional after *United States v. Davis*, 588 U.S. 445 (2019), and *Borden v. United States*, 593 U.S. 420 (2021), because the predicate VICAR murder offense did not constitute a crime of violence under § 924(c)(3)(A), the elements clause of § 924(c)(3).

The district court denied Elmore's motion to vacate. *United States v. Elmore*, 624 F. Supp. 3d 1123 (N.D. Cal. 2022). The court declined to address the government's procedural arguments, *id.* at 1130–31, and instead denied Elmore's claim on the merits, holding that VICAR murder is categorically a crime of violence under the elements clause

---

[3] Elmore pleaded guilty to violating § 924(j)(1) on a *Pinkerton* theory of liability, which has no bearing on whether the predicate offense for this conviction constitutes a crime of violence under § 924(c)(3)(A). *See United States v. Long*, 301 F.3d 1095, 1103 (per curiam) ("The *Pinkerton* doctrine is a judicially-created rule that makes a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy."); *United States v. Henry*, 984 F.3d 1343, 1355–56 (9th Cir. 2021) (explaining that conviction under *Pinkerton* theory could serve as predicate § 924(c) crime of violence because "[d]efendants found guilty . . . under either a *Pinkerton* or aiding-and-abetting theory are treated as if they committed the offense as principals").

and therefore a proper predicate for Elmore's § 924(j)(1) conviction, *id.* at 1142–44. The court also granted a certificate of appealability as to the proper mode of analysis to determine whether a VICAR offense constitutes a crime of violence under § 924(c)(3)(A).

This appeal followed. We have jurisdiction under 28 U.S.C. §§ 2253 and 2255(d). We "review de novo whether a criminal conviction is a crime of violence under § 924(c)(3)." *United States v. Howald*, 104 F.4th 732, 736 (9th Cir. 2024) (cleaned up) (quoting *United States v. Buck*, 23 F.4th 919, 923 (9th Cir. 2022)).

## II.

Elmore's 924(j)(1) conviction requires a valid predicate "crime of violence." Section 924(c)(3) defines a crime of violence as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or one "that[,] by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(A)–(B). When Elmore entered his guilty plea, both the first clause of this definition—the "elements" or "force" clause—and the second—the "residual" clause—were in effect. Shortly after his guilty plea, the Supreme Court invalidated the residual clause of § 924(c)(3) for vagueness. *Davis*, 588 U.S. at 470. Thus, to constitute a predicate crime of violence sufficient to support Elmore's § 924(j)(1) conviction, the dismissed

VICAR charges must satisfy § 924(c)(3)(A), the elements clause of § 924(c)(3).[4]

## A.

"In determining whether a crime falls within the elements clause and thus constitutes a crime of violence, we apply the categorical approach." *United States v. Buck*, 23 F.4th 919, 924 (9th Cir. 2022); *see United States v. Mathews*, 37 F.4th 622, 626 (9th Cir. 2022) ("[C]ourts *must* apply the categorical approach when determining whether an offense is a crime of violence."). "'Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant,' and our focus is 'whether the elements of the statute of conviction meet the federal standard.'" *United States v. Begay*, 33 F.4th 1081, 1090 (9th Cir. 2022) (en banc) (quoting *Borden*, 593 U.S. at 424).

Where a statute is divisible, meaning it "lists elements in the alternative, and thereby defines multiple crimes," we apply the modified categorical approach. *Buck*, 23 F.4th at 924 (cleaned up) (quoting *Mathis v. United States*, 579 U.S. 500, 505 (2016)). Under that approach, we may "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 579 U.S. at 505. "[W]hen reviewing the[se] documents, a court can discover what the prosecutor included as elements of the crime and to what elements the

---

[4] Additionally, an offense that can be conducted with a mens rea of negligence or recklessness does not require the "use of physical force against" another and therefore cannot constitute a crime of violence under § 924(c)(3)(A). *Borden*, 593 U.S. at 445 (plurality opinion) (analyzing the nearly identical elements clause of 18 U.S.C. § 924(e)); *id.* at 446 (Thomas, J., concurring).

petitioner pleaded guilty." *Almanza-Arenas v. Lynch*, 815 F.3d 469, 479 (9th Cir. 2016) (en banc).

Once we have determined the elements of an offense, we must consider whether that specific crime, as charged or convicted, satisfies § 924(c)(3)(A), the elements clause of § 924(c)(3). *See United States v. Taylor*, 596 U.S. 845, 850 (2022) ("The only relevant question is whether the [] felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force.").

In Elmore's case, we must determine whether the elements of the predicate charged VICAR offenses necessarily involve the "use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). "Unless the least culpable act criminalized [by the statute] entails that force, the statute is not a categorical match with the elements clause, and it does not qualify as a crime of violence." *Begay*, 33 F.4th at 1091.

## B.

We begin with the text of the VICAR statute, which provides that:

> Whoever . . . for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in

> violation of the laws of any State or the
> United States . . . shall be punished.

18 U.S.C. § 1959(a). We have characterized a VICAR conviction as requiring proof: "(1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendants committed a violent crime; and (4) that they acted for the purpose of promoting their position in" or receiving something of pecuniary value from a qualifying racketeering enterprise. *United States v. Fernandez*, 388 F.3d 1199, 1220 (9th Cir. 2004) (quoting *United States v. Bracy*, 67 F.3d 1421, 1429 (9th Cir. 1995)). The third element—requiring proof that a defendant has committed one of the enumerated offenses, in violation of state or federal law—incorporates the elements of the relevant predicate violation. *See* Ninth Circuit Manual of Model Criminal Jury Instructions 18.8 (explaining that third element must specify the relevant VICAR crime, as defined in a "specific jury instruction stating all elements of [the] predicate crime").

While the VICAR statute refers to a generic federal offense (e.g., "murders," "assaults"), we have held that a VICAR conviction requires proof that the offense violated state or federal law. In *United States v. Adkins*, we considered an instructional error challenge to a VICAR assault conviction based on violation of Hawai'i law. 883 F.3d 1207, 1210–11 (9th Cir. 2018). The district court had rejected the defendant's proposed jury instruction defining the necessary mens rea under Hawai'i law, which included a self-defense instruction, and instead instructed the jury on the broader, federal definition of "knowingly." *Id.* at 1209–10. We explained that, while we had previously permitted jury instructions using generic federal definitions in the

VICAR context, *id.* at 1210 (citing *United States v. Joseph*, 465 F. App'x 690, 696 (9th Cir. 2012) (unpublished)), "courts, in certain circumstances, should instruct on the state definition or otherwise risk prejudice to the defendant," *id.* at 1211 (citing *United States v. Carrillo*, 229 F.3d 177, 185 (2d Cir. 2000)). Prejudice could result if a jury was not instructed on the definition of the state-law predicate:

> If the jury were instructed simply to find whether the defendant committed the offense of "murder," but not instructed as to the requisite state of mind or the law respecting self-defense[,] affirming such a conviction would be seriously problematic because the defendant's actions, as found by the jury, might not constitute murder [under state law].

*Id.* (cleaned up) (quoting *United States v. Pimentel*, 346 F.3d 285, 303 (2d Cir. 2003)). And a valid VICAR conviction requires proof of a predicate violation of state or federal law.

## C.

Because the VICAR statute is divisible, we must apply the modified categorical approach. *See supra* Section II.A. The VICAR statute sets out different substantive offenses, with different punishments. *See* 18 U.S.C. § 1959(a)(1)–(6) (setting out distinct punishments for murder, maiming, assault, etc.); *Buck*, 23 F.4th at 925 (explaining that statutes enumerating "different crimes with different punishments" are divisible). And the relevant predicate state- or federal-law violation must be proven beyond a reasonable doubt. We therefore agree with our sister circuits that "the modified categorical approach applies to substantive VICAR offenses, and that 'a substantive VICAR offense is a crime of violence

[under § 924(c)(3)(A)] when predicated on at least one violent crime in aid of racketeering acts.'" *United States v. Pastore*, 83 F.4th 113, 119 (2d Cir. 2023) (cleaned up) (quoting *United States v. Laurent*, 33 F.4th 63, 88 (2d Cir. 2022)), *cert. granted sub nom. Delligatti v. United States*, No. 23-825 (U.S. June 3, 2024);[5] *accord Alvarado-Linares v. United States*, 44 F.4th 1334, 1342 (11th Cir. 2022); *United States v. Lassiter*, 96 F.4th 629, 636 n.2 (4th Cir. 2024).

Applying the modified categorical approach, we conclude that Elmore was charged with VICAR murder in aid of racketeering under 18 U.S.C. § 1959(a)(1) predicated on murder in violation of California law. The operative indictment alleged that the VICAR charges were predicated on Elmore's having "unlawfully and knowingly . . . murder[ed] [the victims] in violation of California Penal Code Sections 187, 188, 189, and 31–33." To find a principal guilty of this substantive crime, a jury would have to find that the defendant committed California murder for the purpose of promoting their position within, or receiving something of value from, a qualifying racketeering enterprise.

**D.**

The next step of the analysis is to determine whether VICAR murder in aid of racketeering under § 1959(a)(1)

---

[5] On June 3, 2024, the Supreme Court granted a petition for certiorari to address the question of "[w]hether a crime that requires proof of bodily injury or death, but can be committed by failing to take action, has as an element the use, attempted use, or threatened use of physical force." *See* Petition for Writ of Certiorari at (i), *Delligatti*, No. 23-825 (U.S. June 3, 2024). That issue is unrelated to the Second Circuit's analysis regarding the application of the modified categorical approach to VICAR offenses.

predicated on California murder falls within the elements clause.

We have never addressed how courts should analyze VICAR offenses for this purpose. Elmore argues that, when applying the modified categorical approach to determine whether the charged VICAR offense satisfies the elements clause, courts should look through to the elements of the charged VICAR murder predicate (here, California murder). The government argues that every charged VICAR murder necessarily has generic federal murder as an element, so courts need not look to the charged predicate at all. In the context of this case, Elmore has the better argument.

Although we have recognized that, in limited circumstances, the federal generic definition of the offense may be substituted for the state-law definition, *see Adkins*, 883 F.3d at 1210–11, we have never addressed whether generic murder is an independent element of VICAR murder, such that it should be charged or instructed. And we need not consider that question today. We hold only that where, as here, application of the modified categorical approach reveals that the predicate state-law violation supplied the definition of murder for the VICAR offense, courts should look through to the elements of that predicate violation to determine whether the VICAR offense, as charged or convicted, constitutes a crime of violence under § 924(c)(3)(A).

The documents we may consider under the modified categorical approach confirm that Elmore was charged with VICAR murder as defined by California law. Because both parties define generic murder as federal murder under 18 U.S.C. § 1111, we assume without deciding that this proposed definition is correct for the purpose of resolving

this appeal.**⁶**   Nothing in the record suggests that generic murder supplied the definition of murder for Elmore's charged VICAR offenses, or that the government was prepared to prove generic murder at trial.   In the relevant counts of the indictment, the government alleged that Elmore "unlawfully and knowingly did murder [the victims]," citing California murder statutes and offering no other definition of "murder."   And, while the government points to Elmore's plea hearing transcript, the language it highlights does not show that Elmore pleaded guilty to anything involving generic murder.   At the plea hearing, the parties agreed that the elements of the § 924(j)(1) charge included the knowing use of a firearm to cause "murder[] . . . that is, the unlawful killing with malice aforethought of a person."   This does not suggest that the underlying, dismissed VICAR murder charges defined murder under § 1111, but rather tracks the statutory language of § 924(j)(1), which authorizes specific punishment "if the killing is a murder (as defined in [§] 1111)."   And both § 1111 and California law define murder to include unlawfully killing a person with "malice aforethought." Finally, although we do not rely on these documents to

---

⁶ Both the California Penal Code and § 1111 define murder to include the unlawful killing of a person with "malice aforethought." Cal. Penal Code § 187; 18 U.S.C. § 1111(a).  However, the two diverge in how they define "malice aforethought."  *Compare* Cal. Penal Code § 188 (defining malice as "express," meaning "deliberate intent[] to unlawfully take away [] life," or "implied," meaning "no considerable provocation appears, or [] the circumstances attending the killing show an abandoned and malignant heart"), *with Begay*, 33 F.4th at 1091 (defining "malice aforethought" as "(1) intent to kill; (2) intent to do serious bodily injury; (3) depraved heart (i.e., reckless indifference); and (4) intent to commit a felony" (quoting *United States v. Pineda-Doval*, 614 F.3d 1019, 1038 (9th Cir. 2010))).

determine the elements of Elmore's dismissed VICAR murder charges, we note that the jury instructions provided at the trials of Elmore's co-defendants define only California murder. *See United States v. Williams*, No. 3:13-cr-00764-WHO-1, Dkt. 1768 at 38 (defining "malice aforethought" under California law); Dkt. 2274 at 40 (same).

Where, as here, there is no evidence that a generic offense was an element of the charged VICAR offense, courts should look through to elements of the charged state-law predicate violation to determine whether the VICAR offense satisfies § 924(c)(3)(A), the elements clause of § 924(c)(3). This is consistent with the approach adopted by at least two of our sister circuits. *See Alvarado-Linares*, 44 F.4th at 1343 (explaining, where indictment charged VICAR murder based on Georgia murder and jury was instructed on definition of Georgia murder, that the court "cannot answer th[e] question" of whether the VICAR murder conviction was a crime of violence "without looking at Georgia law"); *Pastore*, 83 F.4th at 120–22 ("Delligatti's substantive VICAR offense 'hinges on' the underlying predicate offense, and so 'we look to that predicate offense to determine whether' Delligatti was charged with and convicted of a crime of violence." (cleaned up) (quoting *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009))); *United States v. White*, 7 F.4th 90, 104 (2d Cir. 2021) (holding that VICAR offense is a crime of violence because New York assault in the second degree satisfies the elements clause).

Here, such analysis requires determining whether California murder "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A), such that Elmore's

charged VICAR murder offenses are a valid predicate for his
§ 924(j)(1) conviction.

### III.

Because the district court did not consider whether
California murder is a crime of violence and declined to
address the government's procedural arguments, we reverse
and remand for further proceedings consistent with this
opinion.

**REVERSED AND REMANDED.**