NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 23 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> ISRAEL ALBERTO RIVAS GOMEZ, AKA Pirra, AKA Israel Gomez Gomez, <br><br> Defendant - Appellant. | No. 23-653 <br><br> D.C. No. 1:18-cr-00002-JLT-SKO-1 <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Jennifer L. Thurston, District Judge, Presiding

Submitted March 4, 2025*
San Francisco, California

Before: WARDLAW, PAEZ, and LEE, Circuit Judges.

Israel Alberto Rivas-Gomez ("Rivas") appeals his convictions for murder

and kidnapping in aid of racketeering under 18 U.S.C. § 1959(a)(1) ("VICAR").

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

On the evening of December 18, 2019, Abel Rodriguez ("Rodriguez") was

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

kidnapped and murdered by several individuals associated with the gang MS-13—"Molesto," "Pilancho," "Little Whisper," Rivas, and Marcos Castro ("Castro"). Sometime after 8:00 p.m. that evening, Molesto and Castro transported Rodriguez to a canal, where Molesto held Rodriguez at knifepoint. Later that evening, Rivas, Little Whisper, and Pilancho arrived at the canal, and Rivas drove the group—minus Castro—to the mountains. According to Rivas's statements to detectives, Molesto confronted Rodriguez about a prior incident, where Rodriguez had followed Molesto and Little Whisper with a knife and a bat. Once the group arrived at the mountain, Molesto, Pilancho, and Little Whisper took Rodriguez out of the car, over a fence, and hacked and stabbed him to death. At some point during the attack, Molesto called Rivas over and instructed him to hack and stab Rodriguez, though Rivas claimed that Rodriguez was unresponsive at that point.

Rivas and Castro were charged as co-defendants for their participation in the kidnapping and murder of Rodriguez under VICAR. With respect to Rivas, the government charged him as engaging in murder and kidnapping under California law, as a principal or aider and abettor, and argued that Rivas engaged in these crimes to advance his stature in the gang. Following a 30-day trial, a jury convicted Rivas on both counts.

1. The district court erred by declining to instruct the jury on the elements of California aiding and abetting liability to show that Rivas was liable

for California murder in satisfaction of VICAR's third element.[1]  "The third element [of VICAR]—requiring proof that a defendant has committed one of the enumerated offenses, in violation of state or federal law—incorporates the elements of the relevant predicate violation."  *Elmore*, 118 F.4th at 1199.  And where the predicate violation is based on state law, "courts, in certain circumstances, should instruct on the state definition or otherwise risk prejudice to the defendant."  *United States v. Adkins*, 883 F.3d 1207, 1211 (9th Cir. 2018).  Accordingly, to prove that Rivas was liable for California murder as an aider and abettor, the district court was required to instruct the jury on the elements of California aiding and abetting liability, to the extent it differed from federal law.  *Id.*[2]

Nonetheless, the district court's error was harmless.  *See United States v.*

---

[1] To sustain a VICAR conviction, the government must prove beyond a reasonable doubt:

> (1) that the criminal organization exists; (2) that the organization is a racketeering enterprise; (3) that the defendants committed a violent crime; and (4) that they acted for the purpose of promoting their position in or receiving something of pecuniary value from a qualifying racketeering enterprise.

*United States v. Elmore*, 118 F.4th 1193, 1199 (9th Cir. 2024) (quotations and citations omitted).

[2] The government cites to out-of-circuit authority to contend that it may utilize federal liability theories to show an underlying violation of state law.  *See, e.g.*, *United States v. Diaz*, 176 F.3d 52, 96 (2d Cir. 1999).  However, we are not bound by this authority.  And we note that the Second Circuit has subsequently questioned the validity of these authorities.  *See United States v. Carrillo*, 229 F.3d 177, 183–85 (2d Cir. 2000); *see also Adkins*, 883 F.3d at 1211 (citing *Carillo* with approval).

*Conti*, 804 F.3d 977, 980 (9th Cir. 2015). Applying the elements of California aiding and abetting liability, "it appears beyond a reasonable doubt" that the jury would have convicted Rivas as an aider and abettor. *See id.* (internal citation and quotation marks omitted). Rivas contends that California and federal law differ, because, in the context of aiding and abetting *implied malice* murder, California law focuses on aiding and abetting the "life-endangering *act*, not the result of that act." *See People v. Reyes*, 14 Cal. 5th 981, 991 (2023).

However, California law recognizes two mental states that support a conviction of murder: (1) express malice; and (2) implied malice. Cal. Penal Code § 188. And in the context of aiding and abetting *express malice* murder, California courts permit the use of California's standard aiding and abetting jury instruction[3]—which is substantially similar to the federal instruction that was given here. *See People v. Powell*, 63 Cal. App. 5th 689, 715 (2021); *People v. Coley*, 77 Cal. App. 5th 539, 547, (2022), *as modified* (Apr. 15, 2022). Here, there is no question that: (1) at a minimum, Molesto murdered Rodriguez with express malice, given that he had been looking for Rodriguez, orchestrated the kidnapping and murder, kidnapped Rodriguez, and hacked and stabbed Rodriguez to death; and (2) Rivas aided Molesto's commission of the murder. Thus, the result under California law would be the same as under federal aiding and abetting, since Rivas

---

[3] *See* Jud. Council of Cal. Crim. Jury Instr. No. 401 (2024).

would be guilty of aiding and abetting an express malice murder.

Furthermore, even applying the elements of aiding and abetting *implied malice* murder, the jury would still have convicted Rivas beyond a reasonable doubt. Rivas's only claim of prejudice is that California law requires that a defendant engage in an act that aids or abets the life ending act—*i.e.* the stabbing and hacking of the victim—and that the government failed to show this. However, Rivas's actions of driving Rodriguez to a secluded location where he was ultimately hacked and stabbed to death constitutes an act that aided the act of stabbing and hacking Rodriguez as it made it more difficult for Rodriguez to escape. *See Reyes*, 14 Cal. 5th at 991 ("For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act.").

2.      The district court properly denied Rivas's motion for judgment of acquittal based on his argument that there was insufficient evidence for a reasonable jury to find that: (1) he aided and abetted the murder and kidnapping—specifically that he did not learn of the crime when he had a reasonable opportunity to withdraw—and; (2) his primary motivation for engaging in the crime was to advance his stature in the gang. "[W]e view the evidence in the light most favorable to the prosecution and determine whether any rational jury could have found [the defendant] guilty of each element of the crime beyond a reasonable

doubt." *United States v. Ruiz*, 462 F.3d 1082, 1088 (9th Cir. 2006).

Here, the government presented sufficient, albeit circumstantial, evidence from which a rational jury could have found that Rivas aided and abetted the murder and kidnapping, and did so for the purpose of advancing his stature in the gang. As to whether Rivas had the opportunity to withdraw, the government presented: (1) evidence that crimes such as Rodriguez's kidnapping and murder are typically highly coordinated and planned in advance; (2) testimony from Snakers, a cooperating MS-13 member, that Rivas was seeking to rise to the rank of homeboy, that to rise to the rank of homeboy, Rivas "had to kill somebody," and that Snakers was aware of a plan to kill Rodriguez; and (3) evidence that there was a deleted phone call between Rivas and Molesto the day before the crime. As to whether Rivas engaged in the crime for a gang-motivated purpose, the government presented: (1) significant evidence of Rivas's membership in MS-13; (2) evidence showing that Rivas was familiar with the inner workings of the gang; and (3) testimony from Snakers that Rivas was seeking to rise to the level of homeboy, and that to advance to that rank an MS-13 member must kill someone.

Drawing all reasonable inferences in the government's favor, a rational jury could have concluded beyond a reasonable doubt that: (1) Rivas learned of the plan to murder and kidnap the victim, at least, the day before the crime occurred; and (2) Rivas participated in the crime to advance to the rank of homeboy.

3.     The district court properly denied Rivas's motion to sever and his motion for a new trial based on his argument that his Sixth Amendment right of confrontation was violated. "The Sixth Amendment's Confrontation Clause guarantees the right of a criminal defendant 'to be confronted with the witnesses *against him*' . . . [and] forbids the introduction of out-of-court 'testimonial' statements unless the witness is unavailable and the defendant has had the chance to cross-examine the witness previously." *Samia v. United States*, 599 U.S. 635, 643 (2023) (emphasis added) (citation omitted). Thus, "a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

Here, the district court instructed the jury three times that it could only consider the statements of co-defendant Castro in the case against Castro. And the government carefully divided the evidence between Rivas and Castro in its closing arguments.

Although it appears that some of Castro's statements—that Rodriguez was a member of rival gang and had attacked Pilancho with a bat—may have been utilized against Rivas in the government's rebuttal argument, we nonetheless find this purported error harmless. *See United States v. Nguyen*, 565 F.3d 668, 674 (9th Cir. 2009). As an initial matter, similar information was elicited from Rivas's own

statements at his questioning, where he: (1) recounted that Molesto stated he was looking for Rodriguez because he had assaulted Molesto and Little Whisper; and (2) acknowledged that Rodriguez was likely kidnapped because Rodriguez was a member of a rival gang.

Furthermore, these statements by Castro were relevant to show that Rivas and Castro engaged in the crime to advance their stature in the gang, in satisfaction of VICAR's fourth element. And notwithstanding these statements by Castro, the government presented significant evidence that Rivas engaged in this crime to advance to the level of homeboy through: (1) testimony from the Government's expert that a retaliatory attack could still constitute a gang motivated attack; and (2) testimony from Snakers that Rivas sought to advance to the level of homeboy and that Rivas would need to kill in order to advance to that rank. Thus, it appears the jury would still have reached the conclusion that Rivas engaged in the crime to advance his stature in the gang beyond a reasonable doubt.

4. The district court properly denied Rivas's motion to suppress based on his argument that his *Miranda* warnings were insufficiently conveyed. At the outset, we emphasize that officers can always be certain that *Miranda* has been satisfied if they clearly recite the warnings contained in *Miranda*. *See United States v. Loucious*, 847 F.3d 1146, 1151 (9th Cir. 2017). Nonetheless, *Miranda* does not require a verbatim recitation, so long as the core rights have been

sufficiently conveyed to a defendant. *See id.* at 1149.

Here, utilizing Rivas's translation of the *Miranda* warnings given in Spanish, the detective sufficiently conveyed to Rivas his core *Miranda* rights. Rivas contends that he was misled into believing that the right to an attorney was "self-executing," because detectives questioned him prior to reading him his *Miranda* rights. Thus, Rivas contends that the detective was required to state that an attorney would be appointed to Rivas before questioning "if he so desires" to dispel this confusion. However, the *Miranda* warning apprised Rivas of his right to have an attorney before and during questioning. The only logical inference from this provision of rights is that Rivas would have needed to invoke the right to have an attorney present; the alternative hypothetical, that an attorney would suddenly appear without request or statement of financial need by the suspect, is the kind of "counterintuitive and unlikely scenario" which we have found unavailing. *Florida v. Powell*, 559 U.S. 50, 51 (2010); *see also Loucious*, 847 F.3d at 1148.

**AFFIRMED.**