Filed 4/29/25  P. v. Rodriguez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051710 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC964441) |
| v. | |
| JORGE ARMANDO RODRIGUEZ, | |
| Defendant and Appellant. | |

In 2012, Jorge Armando Rodriguez pleaded no contest to attempted murder of E.Y., a fellow gang member.  Three years later, pleading guilty in a related federal case to a racketeering conspiracy and to attempted murder in aid of racketeering, Rodriguez admitted that he stabbed E.Y., puncturing E.Y.'s lung, and that the "purpose" of the attack was "to kill" E.Y. for cooperating with law enforcement.

In 2022, Rodriguez filed a petition for resentencing under Penal Code section 1172.6 seeking vacatur of his attempted murder conviction on the theory that he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code [sections] 188 and 189, effective January 1, 2019."[1]  After an evidentiary hearing, the trial court denied the petition, reasoning that Rodriguez's admissions in the federal plea agreement and eyewitness testimony about the immediate aftermath of the

---

[1] Unspecified statutory references are to the Penal Code.

attack established beyond a reasonable doubt that Rodriguez intended to kill E.Y. Finding substantial evidence supporting the trial court's conclusion that Rodriguez possessed an intent to kill, we affirm.

## I.    BACKGROUND

### A.    *The Underlying Offense and Rodriguez's Plea*

In 2009, Rodriguez and several other inmates assaulted fellow inmate E.Y. in jail. In 2012, Rodriguez pleaded no contest to attempted murder (§§ 664, subd. (a), 187) and admitted both a gang enhancement (§ 186.22, subd. (b)(1)(C)) and an enhancement for personal infliction of great bodily injury (§ 12022.7, subd. (a)).  The trial court sentenced Rodriguez to a total term of 19 years in prison.

### B.    *The Petition for Resentencing*

In September 2022, Rodriguez petitioned for resentencing under what is now section 1172.6, alleging that he can no longer be convicted of attempted murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017–2018 Reg. Sess.).  In June 2023, the trial court ordered the People to show cause why resentencing should not be granted.

#### 1.    *Testimony at the Evidentiary Hearing*

Correctional Officer Miguel Vargas testified that he was on duty supervising one dorm at the jail in December 2009 when E.Y. was assaulted.  Vargas had just released the inmates from their cells to the dorm's day room and sun deck when an inmate distracted him by asking a question Vargas had answered for him the day before.  Vargas then heard a door open and saw E.Y. running towards him from the sun deck; E.Y. was bleeding from his mouth and looked scared.  E.Y. was being chased by other inmates, but Vargas could only recall the identity of one pursuer, Rodriguez's cell mate.  Vargas stepped between E.Y. and the first of his pursuers and ordered the other inmate to "go lock down."  Other officers responded to Vargas's call for assistance and removed E.Y. while the dorm was secured.

2

Sergeant Jeffrey McCoy was among the officers who responded to the call that evening. E.Y. had suffered a number of stab wounds to the "mid-left" area of his back, though E.Y. was not bleeding a lot. A trail of blood led McCoy to conclude the assault took place in a corner of the sun deck. McCoy found a six-inch jail-made knife or "shank" inside an overturned garbage can on the sun deck.[2] Although McCoy could not recall clear evidence the shank had been used, its pointed blade had been "folded over" against the handle. Searching the cell Rodriguez shared with the inmate Vargas had identified among E.Y.'s pursuers, McCoy found gang indicia with the initials "SSP."

### 2. *The Federal Plea Agreement*

Over defense objection, the trial court admitted into evidence Rodriguez's 2015 plea agreement in a federal racketeering case.[3] In the plea agreement, Rodriguez admitted that in furtherance of a racketeering conspiracy he "knowingly and intentionally attempted to commit murder" in violation of title 18 of the United States Code section 1959(a)(5).

Beyond the elements of the offenses to which he pleaded guilty, Rodriguez agreed that the following facts were true: From at least January 2009 through January 2014, Rodriguez was a member of Sur Santos Pride (SSP), a criminal enterprise of Sureño gang members from San Jose. On December 19, 2009, while in jail, he "participated in a planned and coordinated attack" on an SSP member, "the purpose of [which] attack was to kill the victim for cooperating with law enforcement." Rodriguez participated in the

---

[2] The defense submitted a supplemental lab report with images of the shank, which was admitted into evidence. The lab report indicated that no fibers were observed on the object and no prints were developed. The pointed part of the blade, bent back against the handle, appeared to be about two inches in length.

[3] Rodriguez moved in limine seeking to exclude the third and fifth sentences of paragraph 2(g) and paragraph 2(g)(2), described *post*, as hearsay. In his pretrial brief seeking exclusion of the federal plea agreement, Rodriguez's counsel represented that he had been sentenced in the federal case on February 1, 2016, to 13 years 4 months in prison to run concurrent to the sentence in this instant attempted murder case.

attack "in order to maintain and increase [his] position in [SSP]." "During the attack, [Rodriguez] used a stabbing instrument, commonly referred to as a 'shank,' to stab the victim," and "the victim . . . suffered a punctured and collapsed lung." "[F]ellow SSP gang members further attacked the victim with their hands and feet . . . to inflict as much damage . . . as possible with the goal of causing [the victim's] death."

## C.     *The Trial Court's Denial of the Petition*

The trial court concluded that the evidence demonstrated beyond a reasonable doubt that Rodriguez had a specific intent to kill E.Y. and had taken a direct but ineffectual step toward accomplishing the goal when he stabbed E.Y. with the shank. The court summarized the evidence admitted at the hearing and interpreted Rodriguez's factual admissions in the federal plea agreement as "an admission . . . that he harbored express malice . . . when he stabbed" E.Y.

## II.     DISCUSSION

Rodriguez's 2012 plea of no contest to attempted murder admitted only the essential elements of the offense. (*People v. Rodriguez* (2024) 103 Cal.App.5th 451, 458 (*Rodriguez*).) Under the law then applicable, a person could be convicted of attempted murder as an aider and abettor of a lesser target crime without personally intending to kill the victim, if the natural and probable consequences of the target crime was attempted murder. (*Id*. at p. 456.) Rodriguez's eligibility for resentencing under section 1172.6 thus turned on whether the prosecution could establish beyond a reasonable doubt that he personally intended to kill E.Y. (See §§ 1172.6, subd. (a)(3), 188, subd. (a)(3), 189, subd. (e)(2).) We review for substantial evidence the trial court's determination following the evidentiary hearing that he did, and we find no error. (See *People v. Hill* (2024) 100 Cal.App.5th 1055, 1066.)

## A.     *Rodriguez's 2015 Federal Plea*

By operation of law, Rodriguez's 2015 federal guilty plea to attempted murder in aid of racketeering admitted only the essential elements of the offenses. (*United States v.*

4

*Robinson* (7th Cir. 2020) 964 F.3d 632, 640.)[4]  We thus understand Rodriguez's federal plea to incorporate what was then the California definition of attempted murder, because a conviction under title 18, United States Code section 1959(a) "require[d] proof that the offense violated state or federal law" (*United States v. Elmore* (9th Cir. 2024) 118 F.4th 1193, 1199), and there is no general federal law criminalizing attempted murder except "within the special maritime and territorial jurisdiction of the United States" (18 U.S.C. § 113(a); see *United States v. Carrillo* (2d Cir. 2000) 229 F.3d 177, 185–186 [violation of 18 U.S.C. § 1959(a) requires predicate act based on state law to include essential elements of state crime]).  So the bare fact of Rodriguez's 2015 conviction did not preclude the possibility that another participant's intent to kill was imputed to Rodriguez under a natural and probable consequences theory.

But "[a] defendant, of course, may admit far more than the elements of a charged crime by stipulating to facts in a plea agreement, by agreeing with the government's factual basis, or even by answering the judge's questions during the plea colloquy." (*United States v. Paulette* (7th Cir. 2017) 858 F.3d 1055, 1060.)  And when entering his federal plea, Rodriguez specifically admitted that that he "participated in a planned and coordinated attack" with three other SSP members, that he used a shank to stab E.Y., and that "[t]he purpose of the attack was to kill the victim for cooperating with law enforcement against fellow SSP gang members."  Rodriguez also admitted to being the only one who used a weapon, "a stabbing instrument," while the other assailants used "their hands and feet."  Rodriguez also admitted a motive for the killing—E.Y.'s

---

[4] Rodriguez on appeal takes no issue with the trial court's consideration of the federal plea agreement, only with the court's interpretation of the agreement's content. Although the trial court admitted the plea agreement over Rodriguez's earlier objections, which included an objection based on hearsay, Rodriguez does not renew his hearsay argument on appeal.  (See § 1172.6, subd. (d)(3) [specifying that admission of evidence at the evidentiary hearing shall be governed by the Evid. Code]; see also *People v. Lee* (2011) 51 Cal.4th 620, 650–651 [treating guilty plea as party admission under Evid. Code, § 1220].)

cooperation with law enforcement. (*People v. Smith* (2005) 37 Cal.4th 733, 741 ["evidence of motive is often probative of intent to kill"].) The trial court here reasonably inferred that these admissions constituted evidence that Rodriguez had the intent to kill while committing " ' "a direct but ineffectual act toward accomplishing the intended killing" ' " of E.Y. (*Rodriguez*, *supra*, 103 Cal.App.5th at p. 456 [describing elements of attempted murder].)

Rodriguez, however, argues that insufficient evidence supports the trial court's factual findings because the trial court failed to apply principles of contract interpretation to the admissions in his plea agreement. He cites authority for the construction of ambiguities against the drafter (*United States v. Cope* (9th Cir. 2008) 527 F.3d 944, 949–950), for the presumption of consistent usage (*United States v. Lewis* (4th Cir. 2011) 633 F.3d 262, 270), and for the doctrine of *expressio unius est exclusio alterius* (*United States v. Hill* (11th Cir. 2011) 643 F.3d 807, 876 ["The inference is that which is not included is excluded"].) From these principles, he posits that the impersonal usage of "[t]he purpose" of the group attack on E.Y. admits no personal intent to kill—contrasted with his other admission in the same plea agreement that he "agree[d] with [SSP] members to attack and kill rival *Norteños* in San Jose, California" and "specifically knew and agreed that members and associates . . . would" do so.

But Rodriguez's argument conflates the contractual terms of the plea agreement—which we interpret for their independent legal significance (see, e.g., *People v. Hurlic* (2018) 25 Cal.App.5th 50, 57 [construing terms of plea agreement, "like the terms of any contract," for enforcement of those terms])—with the factual admissions that the trial court interpreted for their evidentiary significance. Unlike the contractual terms of a plea agreement, the associated factual admissions merely assist the forum court in deciding whether the defendant's plea is supported by a sufficient factual basis before accepting or

rejecting the defendant's waiver of trial rights.[5] (See *United States v. Gaither* (9th Cir. 2001) 245 F.3d 1064, 1068 [requirement that district court must ascertain factual basis for plea].) Rodriguez cites no authority applying principles of contract interpretation to factual admissions, nor have we found any. At bottom, the textual ambiguity that Rodriguez relies on does not divest the admissions of evidentiary value that, alone or in combination with the other evidence of the assault on E.Y., supports the intent to kill finding.

Rodriguez also argues that his admission that the "purpose" of the December 2019 attack was to kill E.Y. did not admit that he knew this purpose before stabbing E.Y. But reversal for insufficiency of the evidence is not warranted "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) That this factual admission, standing alone, is in theory subject to a more strained but more favorable construction does not undermine the sufficiency of the evidence here. Although another trier of fact might infer that Rodriguez's admissions did not *conclusively* prove knowledge of the attack's purpose before or during the attack, we defer to the trial court as the fact finder at the section 1172.6, subdivision (d)(3) hearing. To be sure, Rodriguez's factual admissions existed only in writing, but the Legislature in enacting section 1172.6 opted to "requir[e] trial judges to decide the critical factual questions based—at least in some cases—on a cold record." (*People v. Clements* (2022) 75 Cal.App.5th 276, 297 [noting the legislative "middle course" compromise between "a new trial by a new jury" for qualifying offenders or "simply refus[ing] to make the benefits of the new law available" to those convicted under former law].) And in interpreting Rodriguez's admissions in the plea

---

[5] In his reply brief, Rodriguez raises for the first time on appeal that this court should apply a de novo standard of review to the proper interpretation of his plea agreement. But as we are not interpreting the parties' reciprocal contractual obligations, this argument has no merit.

agreement, the trial court also had the benefit of live testimony describing the circumstances and immediate aftermath of the attempted murder, as well as additional physical evidence.

Finally, Rodriguez's admissions that he "agree[d]" with other SSP members "to attack and kill rival" Norteños also lend evidentiary support to the trial court's factual finding. Although Evidence Code section 1101, subdivision (a) prohibits admission of a person's uncharged misconduct to prove conduct on another occasion, subdivision (b) permits the admission of uncharged acts "when relevant to prove some fact" other than criminal propensity, such as motive, intent, or a common scheme. Although the target of the uncharged misconduct (rival Norteño gang members) differed from E.Y. (a fellow SSP gang member Rodriguez believed to have provided information to law enforcement), "[t]he least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402 [requiring that "the uncharged misconduct . . . be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance" ' "].) Rodriguez admitted that both the killings of rival gang members and the attack on E.Y. were for the benefit of SSP and that his participation in both was to enhance his status within SSP. Thus, a reasonable trier of fact could conclude that there was sufficient similarity between the uncharged acts and E.Y.'s attempted murder and that Rodriguez's admission of his intent to kill rival Norteño gang members for the benefit of SSP was probative of his intent to kill E.Y. for the same purpose.

## B.    *Other Evidence Corroborating Rodriguez's Admissions*

"Because direct evidence of a defendant's intent rarely exists," the trier of fact may infer intent "from the circumstances of the crime and the defendant's acts." (*People v. Sánchez* (2016) 63 Cal.4th 411, 457.) The circumstantial evidence presented at the section 1172.6, subdivision (d)(3) hearing strengthened the trial court's interpretation of Rodriguez's factual admissions in his federal plea agreement. That only one shank was

recovered from the crime scene corroborated Rodriguez's admission that he was the only assailant who was armed. E.Y.'s stab wounds further corroborated Rodriguez's intent to kill, given the multiplicity and location of several stab wounds to the mid-left area of E.Y.'s back and the puncturing of E.Y.'s lung. (See *People v. Bolden* (2002) 29 Cal.4th 515, 561 ["plunging the knife" into the back of the "apparently unsuspecting and defenseless victim" indicative of intent to kill]; *People v. Nazeri* (2010) 187 Cal.App.4th 1101, 1118 [numerous stabbing wounds supports inference of an intent to kill].) And the bent blade of the shank found at the scene suggests a degree of force consistent with lethal intent, despite McCoy's testimony that the elongated puncture wounds were not profusely bleeding.

As the reviewing court, it is not our role to reweigh the evidence. (*People v. Wilson* (2023) 90 Cal.App.5th 903, 916.) We review the trial court's decision for substantial evidence and determine whether "substantial evidence supports the trial court's choices between conflicting evidence and reasonable inferences arising from such evidence." (*People v. Alexander* (2010) 49 Cal.4th 846, 883.) Construing all reasonable inferences in favor of the trial court's order, we find that substantial evidence supports the trial court's conclusion that Rodriguez is guilty of attempted murder under current law.

### III.   DISPOSITION

The order denying the petition for resentencing is affirmed.

9

_____
LIE, J.

WE CONCUR:

_____
DANNER, Acting P. J.

_____
BROMBERG, J.

*People v. Rodriguez*
H051710